**COMMERCE BANK OF ST. LOUIS, N.A., Plaintiff,**

v.

**Barbara J. FINDLEY, Defendant/Third Party Plaintiff/Appellant.**

**William J. PARNAS, et al., Defendants,**

v.

**James R. FINDLEY, Third Party Defendant/Respondent.**

No. 63576.

Missouri Court of Appeals, Eastern District, Division Three.

Feb. 8, 1994.

Rehearing Denied April 11, 1994.

Dennis A. Buchheit and Julius H. Berg, P.C., Clayton, for appellant.

Love, Lacks and Paule, Leigh Joy Carson, Clayton, for respondent.

KAROHL, Judge.

Third-party plaintiff Barbara Findley appeals judgment in favor of third-party defendant James Findley on claims for contribution and indemnification. Commerce Bank brought the original suit against five of six makers of a promissory note. James Findley was the only co-maker not sued by Commerce. Barbara and James Findley were makers on the promissory note, along with two other married couples. The Findley's marriage was dissolved and the couple's interest in real estate encumbered by the promissory note secured by a deed of trust was awarded to Barbara Findley. Summary judgment was entered in favor of Commerce Bank on its action against the five defendants it named for breach of the terms of the note. On the same day, the court tried the third-party claim and entered judgment in favor of James Findley.

On appeal, Barbara Findley contends the trial court erred in entering judgment for third-party defendant because: (1) she is entitled to contribution from James Findley as a co-maker for Commerce Bank's judgment against her on the note pursuant to its terms, even though amendments to the note were executed without his signature; (2) James Findley is obligated to indemnify her pursuant to a clause in their separation agreement which was incorporated into their decree of dissolution; and, (3) she should have been permitted to testify concerning her understanding of an ambiguity in the separation agreement.

On July 31, 1986, James and Barbara Findley, William and JoAnn Parnas, and Peter and Beverly Benedetto executed a promissory note for $130,000 payable to Commerce Bank. The note was secured by a deed of trust on real estate known as and numbered 8802–8810 Terwood Drive. They agreed in the note to pay interest at nine percent per annum. The note was payable "ON DEMAND BUT UNTIL DEMAND IS MADE, monthly payments of $1,169.64 principal and interest ... until August 3, 1987, when all sums outstanding will be due and payable." The note also contained the following provision for modifications: "All without notice to and without affecting the liability to Bank of any of the undersigned, *each of the undersigned:* (1) ... consents to the release of any party or parties directly or indirectly liable for payment hereof ... and (2) *consents to any and all amendments, modifications (including changes in interest rate), and/or renewals and extensions* (including successive renewals or extensions and whether for the same term or such shorter or longer terms as Bank may require)." (emphasis added) The note further states "As used herein 'undersigned' shall mean each maker and each endorser, and each, jointly and severally agrees to all the provisions hereof." It is signed by James and Barbara Findley, William and JoAnn Parnas, and Peter and Beverly Benedetto.

For each of the next four years, an "AGREEMENT TO MODIFY AND/OR EXTEND NOTE AND DEED OF TRUST" was executed. Effective August 1, 1987, and August 1, 1988, all six makers of the note signed agreements to extend the payments for another year, the first of which increased the interest rate to 9.5%. Likewise, effective

August 1, 1989, and August 1, 1990, the payments were extended for another year, and the interest rate was increased to 10.25%. The last two extensions were signed by five of the six makers of the note. They were not signed by James Findley.

On December 5, 1989, the marriage of James and Barbara Findley was dissolved. The decree of dissolution incorporated a separation agreement wherein Barbara Findley was awarded four items of real estate including the Terwood property. James Findley received a house in Maryland Heights. The agreement contained the following paragraph pertaining to who would be responsible for debts:

3. *The parties agree that each party shall* pay, defend, *indemnify and hold harmless the other,* whether before or after a judgment is entered, *from any and all debts,* loans, mortgages, obligations, promissory notes secured by deeds of trust, and expenses, including reasonable attorney's fees, in any manner *arising from,* related to or connected with, *any item of property,* real or personal, *respectively received by each* under the provisions of this Agreement, *except for those set over unto [Barbara Findley] in paragraph 1(a)(i)(ii)(iii) and (iv), which property is subject to a deed of trust that secures a note in each instance wherein [Barbara Findley] and [James Findley], together with others, are makers.* (emphasis added)

Paragraph 1(a)(i) refers to the paragraph of the separation agreement in which Barbara Findley is awarded the parties' interest in the Terwood real estate.

On May 31, 1991, Commerce Bank filed a lawsuit against all of the makers of the promissory note except James Findley. Barbara Findley filed a third-party petition against co-maker James Findley for contribution for all sums adjudged against her in favor of Commerce Bank. The petition contained a second count seeking indemnification pursuant to the separation agreement clause referenced above. On December 14, 1992, the court granted summary judgment in favor of Commerce Bank against all five defendants, jointly and severally, in the amount of $153,-401.71. Immediately thereafter, a bench tri-

al was held on the third-party claim which ended with the trial court sustaining third-party defendant James Findley's motion for a directed verdict (sic). The grounds set forth in James Findley's written motion were: (1) on Count I for contribution, there was no "common obligation" and the changes made by the other parties worked a novation which released James Findley; and, (2) on Count II for indemnity, the property settlement and dissolution decree created no contractual obligation.

 Appellate courts treat a motion for a directed verdict at the close of plaintiff's evidence in a court-tried case as a motion to dismiss for failure to make a submissible case or a motion for judgment. *Missouri Farmers Ass'n, Inc. v. Campbell,* 754 S.W.2d 596, 600 (Mo.App.1988). If a motion for directed verdict is properly ruled, we will affirm the directed verdict regardless of the reasons behind the trial judge's decision. *Id.*

 The evidence established that James Findley was a maker of the promissory note that was the subject of Commerce Bank's judgment against Barbara Findley and the other co-makers. A maker is a person who signs or is identified in a note as a person undertaking to pay. Section 400.3–103(a)(5) RSMo Cum.Supp.1993. The contract liability of the maker of a note is unconditional and absolute, and a maker who pays an instrument is entitled to contribution from other co-makers. *Landmark KCI Bank v. Marshall,* 786 S.W.2d 132, 136 (Mo.App.1989). Absent some proof that James Findley was released from his liability on the note, Barbara Findley made a submissible case for contribution on uncontroverted facts.

 James Findley contends that the two agreements to modify and/or extend the note that he did not sign operated as a novation, thereby relieving him of liability on the note. He argues the five parties who signed the last two extension agreements effectively substituted themselves as the obligors on the note and released James Findley from any obligation thereunder.

 A novation is a type of substituted contract. *Wilson v. Midstate Indus., Inc.,*

777 S.W.2d 310, 312 (Mo.App.1989). The elements of a novation are a previous valid obligation, the agreement of all the parties to the new contract, the extinguishment of the old contract, and the validity of the new contract. *Id.* A "novation of debtors" occurs when a creditor agrees to release and extinguish a claim against a debtor, accepting the promise of a third party to discharge the obligation, and it entails the mutual assent among the parties to the old and new obligations. *Id.* The intention of the parties to novate, and of the creditor to release all claims of liability against the original debtor, accomplishes novation. *Id.* at 313.

James Findley suggests the fact that Commerce Bank did not sue him on the note is strong evidence it intended to release him from liability on the note. He also argues the elimination of one person from a group of six persons as makers of a note constitutes the elimination of one debtor and the substitution of a third party, as the six signatories to the original note were operating as a de facto partnership and the five signatories operated as a different partnership, thus meeting the requirement for novation of debtors that there in fact be a different debtor. This creative application of the definition of novation is ineffectual.

■ There is no evidence that Commerce Bank, the holder of the promissory note, ever agreed to cancel or did cancel the note in order to release James Findley of liability. Commerce Bank's decision to name only five of the co-makers in its action on the note does not reflect an intent to release anyone. In addition, there is no evidence James Findley's five co-makers, particularly Barbara Findley, intended to absolve him of his joint liability on the note. In general, consent of co-makers to release other co-makers from liability on a note is required. Absent a provision to the contrary, release of James Findley by Commerce would have resulted in the discharge of all of the obligor signatories on the instrument. *Landmark KCI Bank v. Marshall,* 786 S.W.2d 132, 137 (Mo.App. 1990). In the present case, the note contained a provision whereby the parties consented to the release of any other party; however, mere consent does not effect a re-

lease without some agreement and intent to do so. James Findley consented to the extension and modification agreements by signing the original note because it clearly authorized such agreements without affecting his liability to the bank. The agreements to modify and/or extend the note did not relieve James Findley of liability on the note.

■ Absent proof to the contrary, it is presumed that co-obligors received equal benefit from the obligation and they must contribute equally to its payment. *Lock v. LaFevers,* 648 S.W.2d 640, 641 (Mo.App.1983) (citing *Transwestern Indus., Inc. v. Shue,* 537 S.W.2d 848, 849 (Mo.App.1976)). Accordingly, the judgment of the trial court on Count I, the contribution claim, is a misapplication of law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

■ Barbara Findley's remaining claims of trial court error relate to Count II, the claim for indemnification based on the settlement agreement. This claim depends upon the meaning of a paragraph in the parties' separation agreement in which they agreed to hold each other harmless on real estate and personal property debts except for debts relating to real estate awarded to her, including the debt to Commerce Bank on the Terwood property. She believes she is entitled to indemnity from her former spouse for such "debts, loans, mortgages, obligations, promissory notes secured by deeds of trust, expenses, including reasonable attorney's fees, in any manner arising from" Commerce Bank's claim and her defense thereof.

We find no trial court error with respect to its findings concerning this clause. The agreement and decree do not create any obligation on the part of third-party defendant to hold his former spouse harmless or in any way contribute to any liability which she may have arising out of the note involving the Terwood property. The language is not ambiguous. The plain meaning of the paragraph is that the parties' agreement to indemnify and hold each other harmless for debts associated with each other's property expressly does not apply to the real estate awarded to wife encumbered by Commerce Bank's note and deed of trust. The indemnity on other properties was given by grantee to protect the grantor. Thus, the exception relieved Barbara Findley, who received the

Terwood property, of any indemnity obligation to James Findley.

We affirm the judgment denying indemnity. We reverse the judgment of the trial court and remand with directions that the trial court determine the proper amount of contribution owed and enter judgment in favor of third-party plaintiff Barbara Findley on her claim for contribution from third-party defendant James Findley.

SIMON, P.J., and PUDLOWSKI, J., concur.